IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JANICE GAY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:18-CV-1378-D |
| | § | |
| MANCHESTER MANAGEMENT, LLC, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this action arising from an employee's claim for unpaid overtime compensation under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, the court must decide whether the claim is subject to mandatory, binding arbitration. Concluding that it is, the court grants defendant's motion to dismiss and dismisses this action with prejudice by judgment filed today.

I

This is a suit by plaintiff Janice Gay ("Gay") against defendant Manchester Management, LLC ("Manchester") to recover unpaid overtime pay under 29 U.S.C. § 207(a)(1), a provision of the FLSA. As a condition of employment, Gay entered into an arbitration agreement (the "Agreement") with Manchester. In the Agreement, both Gay and Manchester agreed to "waiv[e] all rights they ha[d] under law to have disputes resolved in

court." D. Mot. Ex. A at 1.[1] The Agreement specifies that all claims related to Gay's employment will "be resolved exclusively through binding arbitration," and that "such claims include, but are not limited to . . . claims and/or violations under the . . . Fair Labor Standards Act ("FLSA") (wage and hour)." *Id.* The Agreement also provides that "all claims, disputes, or controversies arising out of, or related to [the] agreement, including but not limited to its validity, scope . . . [and] enforceability," are subject to binding arbitration. *Id.* And the Agreement directs that "arbitration proceedings shall be conducted . . . in accordance with the Employment Arbitration Rules of the American Arbitration Association," and that "the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*, shall govern this Agreement and the arbitration." *Id.* at 2.

Manchester moves to dismiss Gay's FLSA claim, contending that it falls within the scope of the Agreement and that the dismissal should be with prejudice. Gay opposes the motion. She contends that the Agreement cannot be enforced because it is unconscionable; that the Agreement is invalid for illusory consideration; and that if the court were to order arbitration, these proceedings should be stayed rather than dismissed. Manchester replies,

---

[1] The court is citing the record in this manner because Manchester did not comply with N.D. Tex. Civ. R. 7.1(i)(1) and (4) in briefing this motion. Rule 7.1(i)(1) provides that "[a] party who relies on materials—including depositions, documents, electronically stored information, affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials—to support or oppose a motion must include the materials in an appendix." Rule 7.1(i)(4) provides, in relevant part, that "[e]ach page of the appendix must be numbered legibly in the lower, right-hand corner. The first page must be numbered as '1,' and succeeding pages must be numbered sequentially through the last page of the entire appendix (*i.e.,* the numbering system must not re-start with each succeeding document in the appendix).'" Manchester did not include its exhibits in a properly paginated appendix.

*inter alia*, that questions of validity and enforceability have been delegated to the arbitrator.

II

Section 2 of the Federal Arbitration Act ("FAA") provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3-4) (emphasis in original). When considering a motion to dismiss claims because they are allegedly subject to binding arbitration, the court engages in a two-step process. First, the court determines "whether the parties agreed to arbitrate the dispute." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam) (citation omitted). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (citations omitted). Second, the court decides "'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). "If there is a valid agreement to arbitrate, and there are no legal constraints that foreclose arbitration, the court must order the parties to arbitrate their dispute." *Celaya v. Am. Pinnacle Mgmt. Servs., LLC*, 2013 WL 4603165, at *2 (N.D. Tex. Aug. 29, 2013) (Fitzwater, C.J.). Because of the strong

presumption in favor of arbitration, the party opposing dismissal bears the burden of proving that the agreement is invalid or that the claims are outside the scope of the agreement. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

"[W]here the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Kubala v. Supreme Prod. Servs.*, 830 F.3d 199, 201 (5th Cir. 2016) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). A delegation clause is "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). It is "simply an additional, antecedent agreement" between the parties. *Id.* at 70. "When a delegation clause is present, a different issue must be addressed: "'Who should have the primary power to decide' whether the claim is arbitrable." *Kubala*, 830 F.3d at 202 (quoting *Kaplan*, 514 U.S. at 942). "Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator." *Id*. The presence of a delegation clause obligates the court to "refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Id.* (citing *Rent-A-Ctr.*, 561 U.S. at 68-69). When a party seeking arbitration directs the court to a "purported delegation clause, the court's analysis is limited." *Id.*

The court first determines "whether the parties entered into *any arbitration agreement at all*." *Id.* at 201 (emphasis in original). The court must "distinguish between 'validity' or 'enforceability' challenges and 'formation' or 'existence' challenges." *Arnold v. HomeAway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018). "[W]here the 'very existence of a contract'

containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003)). If the court determines that the parties did enter into such an agreement, then "the only question . . . is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F.3d at 202. The party arguing "that an arbitrator has authority to decide arbitrability 'bears the burden of demonstrating clearly and unmistakably that the parties agreed to have the arbitrator decide that threshold question.'" *Hous. Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 408 (5th Cir. 2014) (quoting *ConocoPhillips, Inc. v. Local 13-0555 United Steelworkers Int'l Union*, 741 F.3d 627, 630 (5th Cir. 2014)). "If there is a delegation clause, the motion to [dismiss] should be granted in almost all cases." *Kubala*, 830 F.3d at 202.[2]

### III

The court first addresses whether there was valid agreement between Gay and Manchester to arbitrate.

---

[2]The Fifth Circuit has clarified that a court will refuse to enforce a delegation clause only in an exceptional case where an argument for arbitration is "wholly groundless." *Kubala*, 830 F.3d at 202 n.1 (citing *Douglas v. Regions Bank*, 757 F.3d 460, 464 (5th Cir. 2014)). But "so long as there is a 'plausible' argument that the arbitration agreement requires the merits of the claim to be arbitrated, a delegation clause is effective to divest the court of its ordinary power to decide arbitrability." *Id.* (citing *Douglas*, 757 F.3d at 463).

-5-

A

Gay contends that the Agreement is not valid because, under Texas contract law, an arbitration agreement is illusory if one party can "avoid its promise to arbitrate by amending the provision or terminating it altogether." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (per curiam). Gay posits that Manchester can avoid its promise to arbitrate because it did not sign the Agreement, so the Agreement is invalid for illusory consideration.

Manchester responds that this issue, as well as Gay's additional arguments that the Agreement is unconscionable, must be referred to the arbitrator because they are "gateway" issues that were delegated to the arbitrator in the Agreement. Manchester also maintains that the language of the Agreement gives its clear return promise to be bound, and that the Agreement contains no language allowing Manchester to unilaterally modify the Agreement.

B

The court concludes that the question whether the parties formed a valid agreement to arbitrate is for the court to decide, and that Manchester has established that there is a valid agreement between the parties to arbitrate.

The determination of the existence of a valid agreement to arbitrate is a matter of state contract law. *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). In Texas, a valid contract must have "'(1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) meeting of the minds, (4) a communication that each party consented to the terms of the contract, (5) execution and delivery of the contract with intent it become mutual and binding on both parties, and (6) consideration.'" *Song v. 4170 & 4231 & 4271*

*Altoona Drive Holdings Ltd. P'ship*, 616 Fed. Appx. 645, 648 (5th Cir. 2015) (per curiam) (quoting *Expro Arms., LLC v. Sanguine Gas Expl., LLC*, 351 S.W.3d 915, 920 (Tex. App. 2011, pet. denied)). Here, the parties have only contested whether there was adequate consideration to support formation of the Agreement. "[I]llusory promises imply lack of adequate consideration, which affects contract formation." *Arnold*, 890 F.3d at 550.

"Consideration is a present exchange bargained for in return for a promise . . . consist[ing] of either a benefit to the promisor or a detriment to the promisee." *Roark v. Stallworth Oil & Gas*, 813 S.W.2d 492, 496 (Tex. 1991). "[M]utual promises to submit all employment disputes to arbitration constitute[] sufficient consideration, because both parties [are] bound to the promises to arbitrate." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003) (citing *In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2002) (orig. proceeding)). But "if the terms of a promise make performance optional, the promise is illusory and cannot constitute valid consideration." *Tex. Custom Pools, Inc. v. Clayton*, 293 S.W.3d 299, 309 (Tex. App. 2009, orig. proceeding).

Gay maintains that Manchester is not bound to the Agreement because it never signed the physical document. She contends that "Manchester in essence reserved for itself the power to terminate the arbitration agreement at any time, without notice." P. Br. at 7. Gay is correct that when one party to an arbitration agreement can avoid enforcement of that agreement, the agreement is invalid for illusory consideration. *See Carey*, 669 F.3d at 206; *Morrison v. Amway Corp.*, 517 F.3d 248, 257 (5th Cir. 2008); *Weekly Homes, LP v. Rao*, 336

S.W.3d 413, 421 (Tex. App. 2011, pet. denied).[3] But the cases she cites are factually distinguishable because they turn on the presence of language in employee handbooks or distributor agreements that specifically allows the employer to unilaterally revise the arbitration agreement or to avoid arbitration entirely. This is not the case here. The Agreement states that "[b]oth employee and the company understand that, by agreeing to arbitration, they are knowingly and voluntarily agreeing to substitute a legitimate form of dispute resolution (arbitration) for litigation, and thereby are waiving all rights they have under law to have disputes resolved in court." D. Mot. Ex. A at 1 (capitalization omitted). Manchester contends that this language unquestionably binds it to the Agreement.

Manchester also asserts that the Agreement does not contain any language that would allow it to unilaterally modify the Agreement. Gay's only response is unpersuasive. She does not point to any language in the Agreement that would allow Manchester to avoid arbitration or to unilaterally revise the Agreement. Instead, she argues that the absence of Manchester's signature on the physical Agreement would allow Manchester to avoid arbitration as if the Agreement did contain such language. Texas courts have held, however,

---

[3]Each of these cases involved an arbitration agreement within a larger employment agreement or employee handbook. In *Carey* the arbitration agreement in the employee handbook was illusory because the handbook gave the employer the unilateral "right to revise, delete, and add to the employee handbook." *Carey*, 669 F.3d at 206. Similarly, in *Morrison* the arbitration agreement was illusory because the distributor agreement that contained it could be "amended and published" at any time by the employer. *Morrison*, 517 F.3d at 257. Finally in *Rao* the court held an arbitration agreement was illusory because the employee handbook stated that it was "not to be interpreted as a promise by the Company that any particular situation [would] be handled in the express manner set forth in the text." *Rao*, 336 S.W.3d at 421.

that when one party signs an arbitration agreement, the agreement is binding on both parties if the other "accept[s] by [its] acts, conduct, or acquiescence in the terms of the contract." *Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co.*, 849 S.W.2d 380, 392 (Tex. App. 1993, writ denied). The Texas General Arbitration Act ("TGAA") requires that arbitration agreements be in writing, but, with two exceptions that do not apply to these facts, it "does not require that the agreement or the contract be signed by the parties in order for the arbitration provision to be valid." *Id.*[4] "Under [Texas] general contract law, a party is bound by the terms of the contract that [she] has signed," and "it is not necessary that the [arbitration] agreement be signed by both parties." *Id.* (holding that employer's acts in seeking to compel arbitration clearly demonstrated its intent to be bound by the arbitration agreement even though it had not signed physical document).

Here, Gay showed her intent to be bound to the Agreement by initialing each page of the document and signing it on the final page. D. Mot. Ex. A at 1-6. Manchester demonstrated its intent to be bound by seeking to dismiss this action in favor of binding arbitration. Manchester has explicitly conformed to the terms of the Agreement by "promptly mov[ing] to discontinue" this proceeding in favor of binding arbitration. *Id.* at 5. This demonstrates that Manchester intends to be bound by the Agreement. Without a showing of any language in the Agreement that would allow Manchester to unilaterally

---

[4]The TGAA requires that both parties sign a contract containing an arbitration agreement "in two specific instances: contracts for the acquisition of property, services, money, or credit where the consideration is $ 50,000 or less, and claims for personal injury." *Hearthshire*, 849 S.W.2d at 392.

revise it or avoid arbitration, the cases on which Gay relies are inapposite.

Moreover, the Agreement states that "the parties' mutual promises to arbitrate disputes, rather than litigate them before courts or other tribunals, provide adequate consideration for each other." *Id.* at 1. Texas courts have consistently held that "'a written instrument reciting a consideration imports one, and with such a recitation we presume the consideration [to be] sufficient.'" *McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 335 (Tex. App. 2011, no pet.) (quoting *Hoagland v. Finholt*, 773 S.W.2d 740, 743 (Tex. App. 1989, no writ)). The Agreement is enforceable against Manchester. Because Gay has failed to show that the promises given in the Agreement are not binding on both parties, the court concludes that the consideration is sufficient and that the parties formed a valid agreement to arbitrate.

IV

The court next addresses whether it is for the court or the arbitrator to determine whether the dispute in question falls within the scope of the arbitration agreement.

A

Manchester asserts that the Agreement delegates the issue of arbitrability to the arbitrator in two separate places. First, Manchester contends that the Agreement explicitly delegates "gateway" issues of arbitrability to the arbitrator in the "Dispute" section of the Agreement. Manchester maintains that the broad language of the supposed delegation clause demonstrates the parties' intent to delegate "gateway" issues to the arbitrator. Second, Manchester posits that the Agreement incorporates the Employment Arbitration Rules

("Arbitration Rules") of the American Arbitration Association ("AAA"), and that this incorporation constitutes a delegation of the determination of arbitrability to the arbitrator. Third, Manchester asserts that the delegation clause reserves Gay's remaining unconscionability issues for resolution by the arbitrator. Gay has not responded to these arguments.

B

The court concludes that Manchester has "clearly and unmistakably" shown that the parties agreed to delegate "gateway" issues of arbitrability to the arbitrator. *ConocoPhillips*, 741 F.3d at 630. Because Manchester asserts that the Agreement contains a delegation clause, the court's "analysis is initially narrow." *Kubala*, 830 F.3d at 203. If the court determines that the Agreement *does* contain a valid delegation clause, it must refer the claim to arbitration absent some exceptional circumstance. *Id.* Manchester first argues that the Agreement contains a clause that explicitly delegates "gateway" issues of arbitrability to the arbitrator. Manchester contends that the language in the Agreement is intentionally broad to cover any issues of arbitrability.

"[The] strong presumption in favor of arbitration applies with even greater force when the parties include [] broad" language in the arbitration agreement. *Sharifi v. AAMCO Transmissions, Inc.*, 2007 WL 1944371, at *2 (N.D. Tex. June 28, 2007) (Fitzwater, J.). The Agreement states that "[a]ll claims, disputes, or controversies arising out of or related to this Agreement, including but not limited to its validity, scope, interpretation, enforceability, performance, breach, or other challenge to the authority or capacity of any person signing

this Agreements, shall be determined by binding arbitrations as described herein." D. Mot. Ex. A at 1. This language is similar to the delegation clause in *Kubala*, which provided: "[t]he arbitrator shall have the sole authority to rule on his/her own jurisdiction, including any challenges or objections with respect to the existence, applicability, scope, enforceability, construction, validity and interpretation of this Policy and any agreement to arbitrate a Covered Dispute." *Kubala*, 830 F.3d at 204. In *Kubala* the Fifth Circuit held that this language was sufficiently broad to show that "the parties agreed that the arbitrator and not the court should be the decisionmaker on whether a given claim is arbitrable." *Id.* The language of the delegation clause in the Agreement clearly and unmistakably illustrates that the parties agreed to delegate "gateway" issues of arbitrability to the arbitrator and not to the court.

Manchester also maintains that the incorporation of AAA Arbitration Rules constitutes a delegation clause under Fifth Circuit precedent. *See Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). In *Petrofac* the court held that the incorporation of AAA Arbitration Rules into the arbitration agreement presented "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Id.* The AAA Arbitration Rules in force at the time provided that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Id.* The court held that this language clearly allowed the arbitration panel to make decisions regarding arbitrability. *See id.* In the present case, Manchester points to the provision of the Agreement that states "the

arbitration proceedings shall be conducted . . . in accordance with the Employment Arbitration Rules of the [AAA] in effect at the time a demand for arbitration is made." D. Mot. Ex. A at 2. The AAA Arbitration Rules in effect at this time support Manchester's position. Rule 6.a states: "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." Employment Arbitration Rules § 6.a. This is the same language that the Fifth Circuit concluded in *Petrofac* was "evidence that the parties agreed to arbitrate arbitrability." *Petrofac*, 687 F.3d at 675. The language in the Agreement clearly and unmistakably shows that the parties agreed to incorporate the AAA Arbitration Rules, and therefore agreed to delegate arbitrability issues to the arbitrator. The court concludes that the Agreement contains a valid delegation clause.

Third, Manchester maintains that the delegation clause reserves Gay's remaining unconscionability issues for resolution by the arbitrator. In the usual analysis of an arbitration agreement, the court examines "'whether legal constraints external to the parties' agreement foreclose[] . . . arbitration.'" *Webb,* 89 F.3d at 258 (quoting *Mitsubishi Motors*, 473 U.S. at 628). Similarly, a delegation clause is "valid under [the FAA] save upon such grounds as exist at law or in equity for the revocation of any contract." *Rent-A-Ctr.*, 561 U.S. at 70 (citations omitted). But the court may only consider such arguments "if a party challenges the validity 'of the precise agreement to arbitrate at issue.'" *Arnold*, 890 F.3d at 554 (quoting *Rent-A-Ctr.*, 561 U.S. at 71). "[U]nless the party resisting arbitration has 'challenged the delegation [clause] specifically, [the] court must treat it as valid, . . . leaving

any challenge to the validity of the agreement as a whole for the arbitrator.'" *Id.* (quoting *Rent-A-Ctr.*, 561 U.S. at 72). In *Rent-A-Center* the Court held that the plaintiff's unconscionability challenge was focused on the arbitration agreement as a whole rather than the specific delegation clause, and therefore the issue was for the arbitrator to decide. *See Rent-A-Ctr.*, 561 U.S. at 74-76. Each of Gay's unconscionability complaints begins with, "[t]he [A]greement is unconscionable because," and each concerns the enforceability of the Agreement *as a whole*. P. Br. at 2. Gay does not challenge the validity of the delegation clause specifically. For this reason, the court concludes that the unconscionability issues she raises are for the arbitrator, not the court, to resolve. *See Arnold*, 890 F.3d at 554.

Because the Agreement contains a valid delegation clause, the court must refer to the arbitrator for binding arbitration the remaining unconscionability issues that Gay raises. The court must also refer the underlying FLSA complaint to the arbitrator because it falls within the explicit scope of the Agreement. *See* D. Mot. Ex. A at 1 (providing that "claims and/or violations under the . . . Fair Labor Standards Act ("FLSA") (wage and hour)" are subject to mandatory, binding arbitration). All of these issues are "plainly the right and the responsibility only of the arbitrator" to resolve. *Kubala*, 830 F.3d 204.

V

The court finally addresses whether the underlying complaint should be dismissed with prejudice.

A

Manchester contends that applicable Fifth Circuit precedent mandates that the

-14-

complaint be dismissed with prejudice because *all* of the issues that Gay raises are subject to arbitration. Gay responds that the FAA allows the court to stay the action rather than dismiss it, and that practical considerations of jurisdiction should lead the court to stay the action pending the results of arbitration.

B

If the court determines that all claims in a lawsuit are arbitrable, it cannot allow the suit to proceed. *Heritage Capital Corp. v. Christie's, Inc.*, 2017 WL 1550514, at *6 (N.D. Tex. May 1, 2017) (Fitzwater, J.). Although the FAA provides that the court should normally stay the action, the Fifth Circuit has held that dismissal with prejudice is appropriate "in the proper circumstances." *Dean Witter Reynolds*, 975 F.2d at 1164. "The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Id.* (emphasis in original). "When, as here, '[t]he only possible role the Court could have would be to review the arbitration award once the proceedings are concluded[,]' the court should dismiss rather than stay [the underlying complaint]." *Heritage Capital Corp.*, 2017 WL 1550514, at *6 (quoting *SGC Health Grp., Inc. v. eClinicalWorks, LLC*, 2016 WL 2595109, at *2 (N.D. Tex. May 4, 2016) (Lynn, C.J.)). "The reason for dismissal with prejudice is that retaining jurisdiction of the action by the district court serves no purpose because any remedies after arbitration are limited to judicial review based on the grounds set forth in the FAA." *Atlas Health, LLC v. Geoffrey*, 2018 WL 1026271, at *4 (N.D. Tex. Feb. 23, 2018) (Lindsay, J.). Because the court has concluded that all of the issues raised by Gay are arbitrable, the court grants the motion to

dismiss with prejudice.

* * *

For the reasons explained, the court grants Manchester's motion to dismiss and dismisses the action with prejudice by judgment filed today.

**SO ORDERED**.

October 22, 2018.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE